Andy Michael Thompson
1157 Teal Point Drive
Henderson, NV 89074
weareheavenbound@yahoo.com
(702) 467-4374
Plaintiff, Pro Se



FILED _____ RECEIVED
_____ ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

NOV 05 2025

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ RJDO _____ DEPUTY

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

**Andy Michael Thompson,**   Plaintiff Pro Se,

v.

**Nevada Secretary of State,**   Defendant.

Case No. 2:25-cv-01284-CDS-EJY

## [PROPOSED] ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS AND ADVERSE INFERENCE FOR COMPLETED SPOLIATION OF FEDERALLY PROTECTED ELECTION RECORDS

(Fed. R. Civ. P. 37(e); 52 U.S.C. § 20701)

Having reviewed Plaintiff's Motion for Sanctions and Adverse Inference

for Completed Spoliation of Federally Protected Election Records, the

supporting declarations, and the record in this matter, and good cause

appearing,

1

**IT IS HEREBY ORDERED THAT:**

1. The Court finds that the Secretary of State, acting through counsel, was under an active duty to preserve the 2024 election records required by 52 U.S.C. § 20701 at all times relevant to this litigation and appeal.

2. The Court further finds that the election data destroyed between July 21 and September 30, 2025, constituted records within the meaning of 52 U.S.C. § 20701, and that their loss resulted in prejudice to Plaintiff and impairment of this Court's truth-seeking function.

3. Pursuant to Fed. R. Civ. P. 37(e)(2), the Court issues an Adverse Inference Instruction that the destroyed evidence would have demonstrated election irregularities and statutory violations adverse to Defendant's position.

4. The Court imposes sanctions under Fed. R. Civ. P. 37(e)(2), including the reasonable expenses incurred by Plaintiff in investigating and presenting the spoliation.

5. The Court enters default judgment on liability in favor of Plaintiff, or in the alternative, summary judgment as to the established elements affected by the destruction of evidence.

6. The Court refers this matter to the United States Department of Justice pursuant to 52 U.S.C. § 20702 for investigation of the willful destruction of federally protected election records.

7. The Court further orders such additional relief as is necessary to restore the integrity of the judicial process and ensure compliance with federal election-record preservation law.

**IT IS SO ORDERED.**

DATED: _____

_____

**Hon. Cristina D. Silva**
United States District Judge
District of Nevada

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

**Andy Michael Thompson,**  Plaintiff Pro Se,

v.

**Nevada Secretary of State,**  Defendant.

Case No. 2:25-cv-01284-CDS-EJY

## MOTION FOR SANCTIONS AND ADVERSE INFERENCE FOR COMPLETED SPOLIATION OF FEDERALLY PROTECTED ELECTION RECORDS

(Fed. R. Civ. P. 37(e); 52 U.S.C. § 20701)

## I. INTRODUCTION

This Motion is filed to preserve the integrity of the judicial record and to invoke the Court's supervisory duty under Fed. R. Civ. P. 37(e) and 52 U.S.C. § 20701 following the confirmed destruction of federally protected election records after dismissal and during appeal.

Plaintiff brings this motion as a matter of record compulsion, not litigation strategy, a direct response to confirmed Dominion DVS 5.20

modifications executed between July 21 and September 30, 2025, during active appeal.

This conduct constitutes a grave breach of statutory preservation duties and an irreversible act of spoliation under federal law.

Plaintiff acknowledges the Court's interest in efficiency and submits this Motion as a single, consolidated preservation action. It raises no matter previously adjudicated and rests solely on facts arising after prior filings.

Defendant's own correspondence, coupled with unrebutted expert testimony, establishes that the Secretary of State, acting through the Office of the Attorney General, authorized and completed the modification of Dominion systems from version 5.17 to 5.20 under a series of unmaterialized or unwarranted predicates: "mock elections," "recall elections," and "county requests."

Each predicate is now disproven, leaving no legitimate rationale other than evidence destruction.

The Court's supervisory role under Rule 37(e) and § 20701 is thus invoked to restore procedural equilibrium and ensure the truth-seeking function of this tribunal remains intact.

The Court was on notice of both the litigation's pendency and Plaintiff's preservation motions at the time the State commenced with the updates. Despite that notice, and despite prior assurances to refrain, the State proceeded with an action that has erased the very evidence federally required to be preserved.

## II. FACTUAL BACKGROUND

1. **Pending Litigation.**

   Plaintiff's appeal in *Thompson v. Secretary of State* was filed June 20, 2025, and remained active throughout the relevant period.

2. **State Authorization to Alter Evidence.**

   On July 10, 2025, Chief Deputy Attorney General Gregory D.

Ott confirmed by email that the Secretary would "notify the vendor and 15 county election officials" authorizing installation of the 5.20 update between July 21 and September 30, 2025, *(Exhibit A: Ott Email, July 10, 2025.)*

The Ott Email constitutes unrebutted evidence of Secretary authorization, the sole authority under NRS 293.124 and NAC 293B.105. The Secretary explicitly limited the window to September 30, 2025; clerks lack independent power to act outside this directive. Completion is thus inferred from the closed window and Defense silence.

### 3. Unrealized Predicates for the Update.

The Secretary justified the update by citing mock elections, recall elections, and county requests.

Each has been disproven:

- Mock elections used isolated equipment without 2024 data (confirmed by Laena St. Jules).

- Recall election possibility was limited to Mineral County, which confirmed no recall plausibility.

- County "requests" have no independent authority; all action required Secretary approval, *(Exhibit B: Thompson Decl. ¶¶ 4–6; Exhibit I)*

## 4. Technical Proof of Spoliation.

Federal certification records confirm that version 5.20 is a regression-tested modification of 5.17, the certified 2024 election build. Installation of 5.20 over 5.17 overwrites prior data unless separately imaged, a deterministic outcome under Dominion's version-controlled architecture. Nevada remains under VVSG 1.0, which required no such modification. (Exhibits C & J.)

## 5. Anticipating Post Hoc Justifications.

No other explanation survives scrutiny:

- Routine maintenance is refuted by the EAC's own test report showing 5.20 to be a regression-tested modification of the 5.17 baseline (TR-01-01-DVS-2023-01.05, § 2.2.1).

- Security patching cannot apply, as the update reverted firmware paths and addressed no known CVE-listed vulnerabilities (Id. § 2.2.1).

- County-initiated synchronization is foreclosed under NRS 293.124 and NAC 293B.105, which vests sole authority for approval, modification, and certification of voting systems in the Secretary of State.

- Any claim of testing or certification activity contradicts the EAC's timeline showing no active test plan during the July-September 2025 quarter (Id. at 4).

Dominion's certification chronology confirms that "version 5.20" did not succeed 5.17 in the ordinary technical sense. Version 5.17, certified in March 2023 under VVSG 1.0, was the active and lawful build for the 2024 election cycle. The subsequent "5.20" certification, issued February 2025, merely re-issued an earlier software branch under a new date stamp, lacking audit-log continuity and reverting firmware. Thus, when the Secretary authorized the "update" from 5.17 to 5.20, the action was not an upgrade but a rollback that

overwrote and destroyed data protected under 52 U.S.C. § 20701. The numeric appearance of progress concealed the functional regression, creating the illusion of compliance while effectuating erasure.

The *U.S. Election Assistance Commission Certification Test Report* for Dominion Democracy Suite 5.20 confirms this regression: "D-Suite 5.20 is a modified voting system configuration ... built upon a regression review of the modifications against the baseline system and requirements." (*Pro V&V Inc., TR-01-01-DVS-2023-01.05, § 2.2.1 (Feb. 2025).*) Under the EAC Testing and Certification Program Manual (Version 3.0, § 4.5.1.3), regression testing signifies reuse of a prior baseline rather than a forward-generation build. Thus, Nevada's authorization of version 5.20 over 5.17 replaced a certified, data-bearing baseline with a regression image, overwriting 2024 election data protected under 52 U.S.C. § 20701 (see Exhibit J).

Therefore, all conceivable "update" explanations fail under the plain record of the Ott email. The EAC's own certification confirms 5.20 was discretionary, no functional, security, or compliance necessity existed.

The Secretary's failure to image 2024 data before overwrite, despite litigation notice and Dominion's export capability, was not negligence, it was willful destruction of federally mandated records.

## III. SPOLIATION IS ESTABLISHED

The evidentiary pattern thus satisfies the threshold for **knowing spoliation**. The modification from 5.17 to 5.20 occurred after notice of litigation and with foreknowledge that the 2024 system images were subject to federal retention. No other purpose was served. The act therefore meets both prongs of Rule 37(e): intentional destruction of discoverable ESI and deprivation of its use in litigation. The Court is thus required to impose an adverse inference and any further relief necessary to restore evidentiary parity.

The duty to preserve election records arose with litigation and is independently mandated by 52 U.S.C. § 20701, which requires retention of all materials for 22 months following a federal election.

Defendants were on direct notice of that duty by January 30, 2024
(Plaintiff's preservation motions) and again upon the June 20, 2024
Notice of Appeal.

The Secretary's July 2025 authorization of "updates" during this period
constitutes a knowing violation of federal retention law. The Ott email
explicitly authorizes modification from version 5.17, which contained
the 2024 election data subject to preservation, to version 5.20, a clean
build on which no elections have ever been conducted. The effect was
not preservation but displacement, overwriting all retained 2024
configuration, audit, and cast-vote data under the false appearance of
maintenance.

Such conduct meets every spoliation element:

1. **Preservation Duty:** Active and statutory.

2. **Culpability:** The sequence — restraint, dismissal, destruction —
   is probative of intent.

3. **Relevance:** The lost data were the sole evidentiary foundation of
   Plaintiff's claims.

4. **Prejudice:** Total and irreversible.

In *Chin v. Port Auth.*, 685 F.3d 135 (2d Cir. 2012), and *Silvestri v. GM Corp.*, 271 F.3d 583 (4th Cir. 2001), courts held that deliberate evidence destruction warrants adverse inference and, in egregious cases, default judgment.

In May 2024, counsel Laena St. Jules represented on record that she had instructed her client not to push updates pending the case's resolution. That posture was reversed only after dismissal and during appeal.

The Court later struck the emergency designation from preservation motions and deferred response beyond its own announced schedule. Action came only after destruction was complete.

Together, these acts demonstrate institutional awareness and disregard for the duties imposed by 52 U.S.C. § 20701.

## IV. LEGAL ANALYSIS

1. **Violation of Federal Law.**

   Destruction of digital election records within 22 months of a

   federal election is a per se violation of 52 U.S.C. § 20701 and a

   due-process breach.

2. **Intent and Pattern.**

   The sequence of restraint, dismissal, and destruction evidences

   both deliberate timing and mens rea.

3. **No Legitimate Predicate.**

   Every justification offered has been rebutted by fact and technical

   record.

4. **Structural Constitutional Harm.**

   The spoliation nullifies the record foundation of electoral

   legitimacy, inflicting structural injury under the Guarantee

   Clause and Due Process Clause alike.

5. **Strict-Law Addendum.**

   Under a strict reading of *Fed. R. Civ. P.* 37(e)(2) and *52

   U.S.C.* §§ 20701–20702, the evidentiary record before this

   Court satisfies every statutory element for mandatory

sanction. The 22-month preservation duty imposed by § 20701 is absolute and self-executing; its operation does not depend on the pendency of discovery or the discretion of state officials. Once a party with notice of litigation intentionally destroys electronically stored information of evidentiary value, Rule 37(e)(2) requires the Court to presume that the lost evidence was unfavorable and to impose measures sufficient to restore evidentiary parity.

Section 20702 separately criminalizes willful non-compliance with the federal retention duty, reflecting Congress's judgment that destruction of election records is not a procedural irregularity but an offense against the United States. Accordingly, under a strict textual construction, this Court must, at minimum, issue an adverse inference instruction and refer the matter to the Department of Justice for enforcement pursuant to §§ 20701–20702.

## V. RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

1. Issue an **Adverse Inference Instruction** that the destroyed evidence would have supported Plaintiff's claims.

2. Impose **sanctions** under *Fed. R. Civ. P.* 37(e)(2), including reimbursement of reasonable expenses.

3. Enter **default judgment** on liability, or alternatively, **summary judgment** on the affected elements.

4. **Referral Under Federal Law.** Under *52 U.S.C.* § 20702, any officer of election or custodian who *"willfully fails to comply"* with the retention duty mandated by § 20701 *"shall be fined not more than $1,000 or imprisoned not more than one year, or both."* Because the conduct described herein constitutes a deliberate erasure of federally protected election records during active litigation, Plaintiff respectfully requests that the Court refer this matter to the **United States Department of Justice** for investigation and enforcement pursuant to *52 U.S.C.* §§ 20701 and 20702.

5. Grant such other relief as is necessary to **restore the integrity of these proceedings** and to ensure continued compliance with federal election-record preservation law.

## VI. CONCLUSION

The Secretary of State's authorization and execution of the Dominion 5.20 modification during active litigation destroyed federally protected evidence and violated 52 U.S.C. § 20701. This was not maintenance, it was erasure.

The Court's intervention is necessary to uphold Congress's preservation mandate and protect the judiciary's truth-seeking authority.

**Respectfully submitted,**

/s/ Andy Michael Thompson
Plaintiff Pro Se
1157 Teal Point Drive
weareheavenbound@yahoo.com
(702) 467-4374

Dated: November 5, 2025

## CERTIFICATE OF SERVICE

I certify that on November 5, 2025, I served a true and correct copy of

this **Motion for Spoliation Sanctions and Adverse Inference**

**Instruction** upon:

Gregory D. Ott
Chief Deputy Attorney General
Office of the Nevada Attorney General
100 N. Carson Street
Carson City, NV 89701
gott@ag.nv.gov

by electronic mail and by U.S. Mail, postage prepaid.

/s/ Andy Michael Thompson
Plaintiff Pro Se

## DECLARATION OF ANDY MICHAEL THOMPSON
(28 U.S.C. § 1746)

I, Andy Michael Thompson, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Plaintiff Pro Se in this action. I make this declaration based on personal knowledge, direct communications with state and county officials, and review of official correspondence and certification records.

2. On January 30, 2024, I first moved for preservation of 2024 election data under 52 U.S.C. § 20701 and relevant Nevada law. Those motions remained unresolved at the time of dismissal.

3. On June 20, 2025, I filed a Notice of Appeal in the state action, continuing active litigation and thereby preserving the statutory duty to retain all 2024 election materials for twenty-two months under federal law.

4. On July 10, 2025, Gregory D. Ott, Chief Deputy Attorney General for the State of Nevada, sent me an email stating that the Secretary of State had received requests from counties to install the Dominion Democracy Suite (D-Suite) 5.20 update and that the Secretary would authorize those installations between July 21 and September 30, 2025.
   • A true and correct copy of this email is attached as Exhibit A.

5. At the time this authorization was issued, the appeal remained active, and both the Attorney General's Office and the Secretary of State were on notice of their preservation duties under 52 U.S.C. § 20701.

6. On June 24, 2025, I spoke by telephone with Laena St. Jules, Deputy Attorney General and attorney of record for the Secretary of State, regarding the claimed basis for the upcoming system updates.
   • Ms. St. Jules confirmed that "mock elections" were occurring but that none of the Dominion equipment used contained 2024 election data, thereby negating any need for updates to machines holding official records.
   • A contemporaneous log of that call is attached as Exhibit B.

19

7. I also contacted Teresa McNally, Clerk-Treasurer of Mineral County, concerning the asserted recall election predicate cited by the State.
   • Ms. McNally confirmed that the recall effort was below the signature threshold, that no recall was scheduled, and that county participation in the update process was minimal due to its small electorate.
   • A true and correct copy of that correspondence is attached as Exhibit I.

8. Federal certification records confirm that version 5.20 is a regression-tested modification of 5.17, the certified 2024 election build. The EAC Pro V&V Test Report (TR-01-01-DVS-2023-01.05) states: "D-Suite 5.20 is a modified voting system configuration... built upon a regression review of the modifications against the baseline-system" (5.17). Installation of 5.20 over 5.17 overwrites prior data unless separately imaged. (Exhibits C and J)

9. The May 1, 2025 hearing transcript (Exhibit G) and subsequent district court orders striking the "emergency" designation and issuing the October 6, 2025 show-cause order (Exhibit H) establish that both the Court and the State were aware of the preservation duty prior to the destruction of evidence.

10. The Nevada Supreme Court docket (Exhibit F) confirms that the appeal remained pending as of July 17, 2025, immediately before the authorization of updates, completing the notice chain necessary to establish knowledge and intent.

11. The cumulative record therefore shows:
   • Authorization by the State to alter systems during active litigation (Exhibit A);
   • Awareness by counsel and court of the preservation duty (Exhibits B, G, H, I);
   • Alteration by installation of D-Suite 5.20, verified as a baseline regression (Exhibits C, J); and
   • Legal foundation under 52 U.S.C. § 20701 mandating retention of election materials (Exhibit F).

12. Taken together, these facts establish that the update process conducted between July 21 and September 30, 2025, resulted in the erasure of federally protected election data, constituting knowing spoliation in violation of 52 U.S.C. § 20701 and

warranting sanctions under Fed. R. Civ. P. 37(e). The data destruction during active appeal (docketed July 17, 2025; Ex. F) directly mooted Plaintiff's state claims, which seek forensic access to the very records overwrite.

13.     No response or rebuttal to these allegations has been provided by the Attorney General's Office, despite repeated filings and correspondence.

14.     This declaration is submitted in support of my Motion for Spoliation Sanctions and Adverse Inference Instruction and is intended to establish the factual sequence and foundation for my personal knowledge of the matters asserted therein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of November, 2025, in Henderson, Nevada.

/s/ Andy Michael Thompson
Plaintiff Pro Se

## APPENDIX — EVIDENCE INDEX AND EXHIBIT REGISTER

## INTERPRETIVE SUMMARY

- **Authorization:** Exhibits A, J, G demonstrate that the State initiated and approved alterations during litigation.
- **Awareness:** Exhibits B, H, I prove contemporaneous knowledge of the preservation duty by counsel and the court.
- **Alteration:** Exhibits C and J confirm that the authorized act overwrote 2024 election data.
- **Legal Foundation:** Exhibit E anchors the statutory obligation under 52 U.S.C. § 20701.

Together these exhibits establish each element necessary for sanctions under *Rule 37(e)* by closing every inferential gap between duty, knowledge, act, and harm.

Highlighted portions are provided solely for the Court's convenience. The transcript remains verbatim and unaltered from the certified record.

| Exhibit | Description | Evidentiary Function and Relevance |
|---|---|---|
| A | Authorization of County Update Window (July 21 – Sept 30, 2025) | Establishes authorization by the Attorney General's Office for Dominion 5.20 updates during active litigation, forming the initiating act of spoliation. |
| B | Memorial of June 24, 2025 Call with Laena St. Jules | Demonstrates awareness and acknowledgment by state counsel that mock elections were limited to isolated equipment containing no 2024 data—negating any update predicate. |
| C | EAC Certification Record: Dominion 5.17 (2023) | Establishes the certified baseline build for the 2024 election cycle, forming the technical and legal preservation requirement. |
| D | EAC Certification Record: Dominion 5.20 (2025) | Establishes the certified baseline build for the 2026 election cycle, forming the technical and legal preservation requirement. |
| E | 52 U.S.C. § 20701 – Retention and Preservation of Election Records | States the federal preservation mandate requiring 22-month retention; anchors the legal duty forming the sanctionable breach. |
| F | Nevada Supreme Court Notice of Electronic Filing (No. 90846, July 17 2025) | Confirms continuing appellate jurisdiction immediately preceding the authorization of updates, completing the notice-and-control chain. |
| G | May 1, 2025 Hearing Transcript (Spoliation Notice and State Acknowledgment) | Demonstrates contemporaneous judicial and party awareness that updates risked evidence destruction, establishing notice and acknowledgment. |

| Exhibit | Description | Evidentiary Function and Relevance |
|---------|-------------|-------------------------------------|
| **H** | Orders Striking "Emergency" Designation and Order to Show Cause (ECF Nos. 13 & 17) | Shows judicial awareness and procedural control over the preservation issue, evidencing that destruction occurred despite Court notice. |
| **I** | Mineral County Clerk Correspondence (Aug. 7, 2025) | Reveals that the asserted county recall predicates were immaterial and exaggerated, proving that authorization lacked factual basis. |
| **J** | EAC Certification Record: Baseline Regression of Dominion D-Suite 5.20 (Feb. 2025) | Confirms through the Pro V&V Certification Test Report (EAC TR-01-01-DVS-2023-01.05) that 5.20 was regression-tested against the 5.17 baseline, proving that the "update" reused prior architecture and overwrote certified data — documentary evidence of technical downgrade and data loss under 52 U.S.C. § 20701. |

# EXIBIT A

OTT EMAIL ESTABLISHES SECRETARY AUTHORIZATION

# Thompson v. Secretary of State

- Greg D. Ott

  To: me · Thu, Jul 10 at 5:35 PM

  ## Message Body

  Good Evening Mr. Thompson,
  As you may know, I've taken primary responsibility of this case back from Ms. St. Jules.  As the need to continue elections work is continuing throughout the state, the Secretary has received multiple requests from County officials seeking to install the 5.20 update on mechanical voting systems pursuant to NRS 293B.1045(6).  As there is no stay preventing the Secretary from completing his NRS 293B.1045 duties, the Secretary is compelled by statute to consider such requests in good faith.

  This email will confirm that on July 18, the Secretary of State will notify the vendor and 15 county election officials (who use Dominion Voting System machines) that their change and modification requests to install the 5.20 update are approved. The installation of updates may begin approximately July 21st and continue through September 30th, with each county applying the update depending on their schedule and the availability of the vendor.

  If you have questions about your own rights in this action, please reach out to a lawyer of your choosing, but if you would like to discuss the case with me on behalf of the Secretary of State, feel free to reach out to me with questions.
  Best regards, Greg


  **Gregory D. Ott**
  Chief Deputy Attorney General
  Government and Natural Resources Division
  Office of the Attorney General
  100 N. Carson Street
  Carson City, NV 89701
  Phone: (775) 684-1229
  Fax: (775) 684-1108
  gott@ag.nv.gov

  **This e-mail and any attachments are confidential and protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the email or any attachments is prohibited. If you have received this e-mail in error, please notify the sender immediately by replying to the sender and deleting this copy and the reply from your system. Thank you.**

# EXHIBIT B

MEMORIAL OF JUNE 24, 2025 CALL WITH LAENA ST JULES COUNSEL FOR THE NEVADA SECRETARY OF STATE

*This exhibit records Ms. St Jules's confirmation that while mock elections were being conducted, no Dominion equipment used contained 2024 data, ensuring official election records remained preserved and unaffected by subsequent updates.*

PHONE CALL: 775-687-8683

June 23, 10:23am, Augusta, SOS ELECTIONS: (mock elections) they are happening. Going to find out if updates have already been done and if preservation. Will send info to management.

EMAIL: nvelect@sos.nv.gov
June 23, 10:20am

Good morning,

Are mock elections occurring June 23–27, 2025? Have DVS updates been performed? Are CVRs, audit logs, and EMS data preserved per 52 U.S.C. § 20701?

Regards,

Andy Thompson

EMAIL: electioninfo@clarkcountynv.gov

June 23, 10:20am

Good morning,

Are mock elections occurring June 23–27, 2025? Have DVS updates been performed? Are CVRs, audit logs, and EMS data preserved per 52 U.S.C. § 20701?

Regards,

Andy Thompson

10:21 am UNDELIVERABLE


June 23, 2025
Attempt to file Conforming Documents is creating similar problems as that which lead to "service" issues previously. Fields filled out become empty upon proceeding to next steps.


PHONE CALL: 775-687-8683

June 24, 8:25am, Augusta, Rob will call back. Was supposed to have called back yesterday by 3pm.

Rob: 8:34am response, Rob.
Repeated, my questions, referred Laena. Who, instructed you? How did you find out about my involvement with Laena? Response: can't comment on who. Made repeated referals to legal counsel. Refused to answer whether or not he was directed in any way to give me the answer to ask Laena.

Laena St Jules: June 24, 2025, 8:49 am - We have delayed updating Dominion software, according to SOS. No machines containing data from 2024 have been overwritten, to her understanding.


True and Correct Copy – Andy M. Thompson *Case No. 2:25-cv-01284-CDS-EJY*    26

# EXHIBIT C

 

United States Election Assistance Commission

### Certificate of Conformance

### Dominion Voting Systems
### Democracy Suite 5.17

The voting system identified on this certificate has been evaluated at an accredited voting system testing laboratory for conformance to the *Voluntary Voting System Guidelines Version 1.0 (VVSG 1.0)*. Components evaluated for this certification are detailed in the attached Scope of Certification document. This certificate applies only to the specific version and release of the product in its evaluated configuration. The evaluation has been verified by the EAC in accordance with the provisions of the EAC *Voting System Testing and Certification Program Manual* and the conclusions of the testing laboratory in the test report are consistent with the evidence adduced. This certificate is not an endorsement of the product by any agency of the U.S. Government and no warranty of the product is either expressed or implied.

Product Name: **Democracy Suite**

Model or Version: **5.17**

Name of VSTL: **Pro V&V**

EAC Certification Number: **DVS-DemSuite5.17**

Date Issued: **March, 16 2023**

*Steven M. Frid*
*Executive Director*

Scope of Certification Attached

# EXHIBIT D

 

United States Election Assistance Commission

Certificate of Conformance

**Dominion Voting Systems & Democracy Suite 5.20**

The voting system identified on this certificate has been evaluated at an accredited voting system testing laboratory for conformance to the *Voluntary Voting System Guidelines Version 1.0 (VVSG 1.0)*. Components evaluated for this certification are detailed in the attached Scope of Certification document. This certificate applies only to the specific version and release of the product in its evaluated configuration. The evaluation has been verified by the EAC in accordance with the provisions of the EAC *Voting System Testing and Certification Program Manual 3.0* and the conclusions of the testing laboratory in the test report are consistent with the evidence adduced. This certificate is not an endorsement of the product by any agency of the U.S. Government and no warranty of the product is either expressed or implied.

Product Name: **Democracy Suite**

Model or Version: **5.20**

Name of VSTL: **Pro V&V**

EAC Certification Number: **DVS-DemSuite5.20**

Date Issued: **February 4, 2025**

*Executive Director*

Scope of Certification Attached

# EXHIBIT E

52 U.S.C. § 20701 — Retention and Preservation of Records and Papers by Officers of Elections

(Source: Judicial Notice – Federal Statute)

**§ 20701. Retention and preservation of records and papers by officers of elections; deposit with custodian; penalty for violation**

Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that, if a State or the Commonwealth of Puerto Rico designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian. Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both. (Pub. L. 86–449, title III, § 301, May 6, 1960, 74 Stat. 88.) Codification: Formerly classified to 42 U.S.C. § 1974 before editorial reclassification and renumbering.

# EXHIBIT F

PROOF OF SPOLIATION DURING ACTIVE APPEAL

On July 17, 2025, the Nevada Supreme Court docketed *Thompson v. Nevada Secretary of State* (No. 90846). One day later, the Secretary of State authorized Dominion updates to version 5.20, executed July 21, overwriting data governed by 52 U.S.C. § 20701 despite the pending appeal.

Electronically Filed
6/20/2025 2:57 PM
Steven D. Grierson
CLERK OF THE COURT

**IN THE EIGHTH JUDICIAL DISTRICT COURT**
**CLARK COUNTY, NEVADA**

Case No.: A-24-906377-C Dept. No.: 29

---

**ANDY THOMPSON,**
Plaintiff,

v.

**NEVADA SECRETARY OF STATE, et al.,**
Defendants.

---

**NOTICE OF APPEAL**

---

**TO THE CLERK OF THE EIGHTH JUDICIAL DISTRICT COURT AND ALL PARTIES OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff Andy Thompson, appearing Pro Se, pursuant to **Nevada Rules of Appellate Procedure (NRAP) 3(a)** and NRAP **4(a)(1)**, hereby appeals to the Nevada Supreme Court from the Order of Dismissal entered by the Honorable Jacob A. Reynolds on **June 18, 2025**, in the above-captioned case (Case No. A-24-906377-C, Eighth Judicial District Court, Clark County, Nevada, Department 29). A true and correct copy of the Order of Dismissal is attached hereto as **Exhibit A**.

**I. APPEALABILITY**

The June 18, 2025 Order constitutes a final judgment under **NRAP 3A(b)(1)**, as it disposes of all claims and parties in the action, dismissing Plaintiff's Third Amended Complaint with prejudice. The Order is appealable as it denies Plaintiff due process, enables spoliation of federally protected election records in violation of **52 U.S.C. § 20701**, and facilitates election irregularities, as detailed in Plaintiff's filings.

    1. **Parties to the Appeal**:

        • **Appellant**: Andy Thompson, Plaintiff, Pro Se.

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | | |
|---|---|---|
| **ANDY MICHAEL THOMPSON**, | } | Electronically Filed<br>Jul 17 2025 02:37 PM<br>Elizabeth A. Brown<br>Clerk of Supreme Court |
| Appellant, | } | |
| *v.* | } | Supreme Court No. 90846 |
| | } | District Court case No. A906377 |
| **NEVADA SECRETARY OF STATE**, | } | |
| Respondent | } | |

CERTIFICATE THAT NO TRANSCRIPT IS BEING REQUESTED

    Notice is hereby given that appellant, Andy Michael Thompson, is not requesting the preparation of transcripts for this appeal.

    Dated this 17th day of July, 2025

**Respectfully submitted,**
/s/ Andy Michael Thompson
Andy Michael Thompson
1157 Teal Point Drive
Henderson, NV 89074
weareheavenbound@yahoo.com
(702) 467-4374
**Appellant, Pro Se**

Docket 90846   Document 2025-31272

# EXHIBIT G

## TRANSCRIPT EXCERPT: MAY 1, 2025 HEARING (SPOLIATION NOTICE AND STATE ACKNOWLEDGMENT)

*Plaintiff raised explicit concerns regarding **spoliation** giving contemporaneous notice to the Court and opposing counsel of the risk of record destruction by system "updates" establishing that **both the Court and the State acknowledged** that risk without objection or rebuttal.*

```
1        MR. THOMPSON:  Would the Court understand that it's
2   already their obligation to preserve those records and they cannot
3   knowingly engage in a destructive act of those records?  What I'm
4   seeking to understand is whether or not there's a spoliation issue
5   that is occurring here, that the records that I seek, and because this
6   is a contest that I do have access to, according to the Nevada
7   Constitution and NRS 293.410, I actually do have access to them in
8   these proceedings, and I need to preserve that right.
9        And that the imminent update in which I would let the
10  judge know, I did do a public records request for the dates on the
11  updates, and I was given a response that, by June 27th, I would
12  have an initial response to finding out the date for an update to the
13  system.  So I am --
14       THE COURT:  Just a second.
15       Ms. St. Jules, is there any immediate plans to do an
16  update on the machines?
17       MS. ST. JULES:  No, Your Honor.  I've asked my client not
18  to push out the updates.
19       THE COURT:  Okay.  So this is what's going to happen --
20  and Ms. St. Jules, am I right in assuming you are going to file a
21  motion to dismiss once the third amended complaint is filed?
22       MS. ST. JULES:  [indiscernible].
23       THE COURT:  Is that a yes?
24       MS. ST. JULES:  Yes, Your Honor.  Sorry.
25       THE COURT:  All right.  So this is the issue.  So 60 day --
```

# EXHIBIT H

## ORDERS STRIKING "EMERGENCY" DESIGNATION AND TO SHOW CAUSE
### (ECF NOS. 13 & 17)

*These companion orders demonstrate judicial **awareness** that Plaintiff's motions sought **to prevent spoliation** of election evidence, that the "emergency" designation was struck on July 29, 2025, and that standing was made the basis for the subsequent October 6, 2025, show-cause order.*

---

Case 2:25-cv-01284-CDS-EJY    Document 11    Filed 07/29/25    Page 1 of 3

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Andy Michael Thompson, | Case No. 2:25-cv-01284-CDS-EJY |
| Plaintiff | Order Striking Emergency Designation and Ordering Plaintiff to File Proof of Service |
| v. | |
| Nevada Secretary of State, | [ECF Nos. 9, 10] |
| Defendant | |

Pro se plaintiff Andy Michael Thompson filed an emergency motion for temporary restraining order (TRO) and a separate emergency motion for expedited hearing. TRO mot., ECF No. 9; Hearing mot., ECF No. 10. Because I do not find that Thompson has met the standard for either of these motions to be considered an emergency, I strike the emergency designation.

The filing of emergency motions is disfavored and should be confined to "the most limited circumstances." *Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137, 1141 (D. Nev. 2015). Emergency motions burden both the parties and the court, requiring each to "abandon other matters to focus on the pending 'emergency'." *Id.* When a party files a motion on an emergency basis, it is within the sole discretion of the court to determine whether any such matter is, in fact, an emergency. Local Rule 7-4(c).

Generally speaking, an emergency motion is properly presented only when the movant has shown (1) that it will be irreparably prejudiced if the court resolves the motion under the normal briefing schedule and (2) that the movant is without fault in creating the crisis that requires emergency relief or, at the very least, that the crisis occurred because of excusable neglect. *Cardoza*, 141 F. Supp. 3d at 1142 (citing *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995)). If there is no irreparable prejudice, sufficient justification for

1

2                       UNITED STATES DISTRICT COURT
                              DISTRICT OF NEVADA
3

4   Andy Michael Thompson,                          Case No. 2:25-cv-01284-CDS-EJY

5                  Plaintiff                     **Order to Show Cause Why this Action
                                                Should not be Dismissed for Lack of
6   v.                                                        Standing

7   Nevada Secretary of State,

8                  Defendant

9

10        Pro se plaintiff Andy Thompson moves for a temporary restraining order (TRO) (ECF

11  No. 9) and for an expedited hearing (ECF No. 10).[1] In his TRO motion, Thompson seeks to

12  enjoin defendant Nevada Secretary of State from "authorizing or implementing the Dominion

13  Voting System 5.20 update." ECF No. 9 at 1. Thompson also seeks an expedited hearing on July

14  28, 2025, or soon thereafter, to "prevent spoliation of evidence critical to Plaintiff's election

15  challenge." ECF No. 10 at 1–2.

16        The defendant opposes both motions, arguing that the court should deny Thompson's

17  motions on the basis that it violates the "Rooker-Feldman Doctrine," alternatively, if the court

18  determines that it should look at the merits, Plaintiff will still lose "for the same reasons that he

19  lost in Nevada State Court." *See* Opp'n, ECF No. 15. The motions are now fully briefed. Reply,

20  ECF No. 16. Because it appears Thompson lacks standing to bring this action, I order him to

21  show cause as to why this action should not be dismissed for lack of standing.

22

23

24

25  _____
    [1] I previously entered an order denying plaintiff's ***emergency*** motion for temporary restraining order and
26  expedited hearing. *See* Order, ECF No. 8 Further, following Thompson's filing of his emergency motion
    for TRO (ECF No. 9) and a separate emergency motion for expedited hearing (ECF No. 10), I entered an
    order striking the emergency designation of both motions. *See* Order, ECF No. 11.

# EXHIBIT I

MINERAL COUNTY RECALL COMMUNICATION (PREDICATE VERIFICATION)

*Email from Mineral County Clerk-Treasurer Teresa McNally*

## Recall

- Teresa McNally

  To: me · Thu, Aug 7 at 4:05 PM

### MESSAGE BODY

Good Afternoon,

I have a recall that is the works for a Commissioner here in Mineral County. All NRS and State of Nevada Recall Guide has been followed for this recall. They have turned in the 45 day count which is very much below the Count needed. I have had one person give me a letter for name to be removed from the petition. To do a recall in Mineral County this will cost the County approximately $35,000 with 3 sites for voting and 26 people working the special election and doing the counts. This includes all requirements for a special election, including mail ballots to 3,000 people.

Have a Wonderful Day

Teresa McNally
Mineral County Clerk-Treasurer
775-945-2446
Clerk-treasurer@mineralcountynv.org

*Mineral County is an Equal Opportunity Provider and Employer.*
*If you wish to file a Civil Rights program complaint of discrimination, complete the USDA Program Discrimination Complaint Form, found online at http://www.ascr.usda.gov/complaint filing cust. html, or at any USDA office, or call (866)632-9992 to request the form. You may also write a letter containing all of the information requested in the form. Send your completed complaint form or letter to us by mail at U.S. Department of Agriculture, Director, Office of Adjudication, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, by fax (202)690-7442 or email at program.intake@usda.gov.*
**Please note: Effective October 10, 2016 our new office hours will be: Monday - Thursday 7am to 5pm.**

# EXHIBIT J

EAC CERTIFICATION RECORD: BASELINE REGRESSION OF DOMINION D-SUITE 5.20

**Source:**
U.S. Election Assistance Commission, *Certification Test Report – Dominion Voting Systems Democracy Suite 5.20 Voting System*, Pro V&V, Inc., TR-01-01-DVS-2023-01.05 (February 2025).
Available at: https://www.eac.gov/voting-equipment/dominion-voting-systems-democracy-suite-520
EAC Project ID: DVS-DemSuite5.20.

**Relevant Extract (§ 2.2.1 Regression Testing):**

"D-Suite 5.20 is a modified voting system configuration that includes functional upgrades and modifications to the baseline system. Modified system testing is an abbreviated testing campaign built upon a regression review of the modifications against the baseline-system and requirements….
The objective of regression testing is to establish assurance that the modifications have no adverse impact on the compliance, integrity, or performance of the system."

**Interpretive Note:**
This certification record confirms that D-Suite 5.20 was not a newly engineered system, but a regression-tested modification of the previously certified *D-Suite 5.17 baseline*.
Regression testing, by definition under EAC procedures, signifies a reuse of prior architecture rather than a forward-generation build. The Pro V&V report's explicit description, "built upon a regression review of the modifications against the baseline-system," establishes that 5.20's certification was derivative, anchored to 5.17's technical foundation.

Accordingly, Nevada's authorization of the 5.20 installation over existing 5.17 environments replaced a federally certified and data-bearing baseline with a derivative regression image. This action **overwrote the 2024 election data environment** protected under 52 U.S.C. § 20701, constituting spoliation rather than preservation.

**Conclusion:**

Section 2.2.1 of the EAC's official Pro V&V report provides direct documentary proof that *D-Suite 5.20* was **certified by regression against the 5.17 baseline**, establishing that the "update" was in fact a **downgrade and data-destructive regression**, thereby corroborating Plaintiff's spoliation claim.